**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DIRECTV, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 15-CV-07699 |
| | ) | |
| WALTER YUEN, et al. | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Defendants Walter and Mandy Yuen run a Chinese restaurant called Great Wall of China

("Great Wall") in Plainfield, Illinois. On November 19, 2013, an auditor employed by Plaintiff

DirecTV entered Great Wall and requested that Mandy turn on a television in the dining room so

he could watch a specific channel. The auditor then took photographs of the television displaying

that channel and sent a report to DirecTV, which then sued the Yuens and Great Wall for

displaying DirecTV programming without authorization. DirecTV has filed a motion for

summary judgment as to liability.[1] There is a dispute of material fact as to whether or not the

defendants were authorized to display the programming, so the motion for summary judgment is

denied.

---

[1] DirecTV's motion makes no mention of the fact that it is only moving for summary judgment with regard to liability, and only its memorandum in support states that it is moving only for summary judgment as to the 47 U.S.C. § 605 claim (the complaint includes other claims, which are not referenced anywhere in the parties' briefs). In its reply brief, however, DirecTV clarifies that "[a]t this juncture, DIRECTV is moving for Summary Judgment on liability only." Pl.'s Reply at 7. Therefore, the Court takes the motion for summary judgment to be limited to the question of liability under § 605.

# BACKGROUND

On a motion for summary judgment, all fact disputes are resolved in the nonmovant's favor and reasonable inferences from the facts must be construed in the light most favorable to the non-moving party (here, the defendants). *Ripberger v. Corizon, Inc.*, 773 F.3d 871, 876 (7th Cir. 2014). DirecTV provides satellite television programming to its subscribers. Pl.'s Statement of Facts ("PSOF") ¶ 4, ECF No. 23. Walter and Mandy Yuen are the owners and managers of Plainfield China Garden, Inc., which does business as a Chinese restaurant called Great Wall of China. *Id.* at ¶ 5-6. For simplicity, the Court will refer to Walter, Mandy, and Great Wall as "the Yuens" wherever possible.

The Yuens subscribed to DirecTV's service through an account in Walter's name. *Id.* at ¶ 24. The account address was not the address of Great Wall. *Id.* At some point, the Yuens moved a DirecTV receiver into Great Wall. *Id.* at ¶ 26-27. DirecTV offers both residential and commercial accounts; the Yuens' account was classified by DirecTV as residential. PSOF ¶ 24; Mader Aff. ¶ 6, ECF No. 22-5.

Walter, however, maintains that he did not know his account was classified as "residential." Supp. Walter Yuen Aff. ¶ 6-8, ECF No. 37. In fact, when Walter bought the DirecTV service, he explained to the representative that he would like to watch a Hong Kong television channel while working in his restaurant. Walter Yuen Aff. ¶ 4, ECF No. 32-1. Walter asked whether he could bring the DirecTV receiver to the restaurant and the representative said he could.[2] *Id.* DirecTV disputes this claim, which is central to DirecTV's cause of action under

---

[2] DirecTV objects to Walter's testimony about what the DirecTV representative said as hearsay. *See* Pl.'s Reply at 8, ECF No. 33. However, Walter's testimony about what DirecTV's representative told him is plainly a non-hearsay statement of a party-opponent. *See United States v. Dish Network, LLC,* 75 F. Supp. 3d 942, 966 (C.D. Ill. 2014); Fed. R. Evid. 801(d)(2)(A). Further, the representative's alleged authorization is not a statement offered for its truth; rather, its import lies in the (alleged) fact that it was said.

§ 605. In reliance on those statements, Walter purchased the service and brought a receiver to the restaurant. *Id.* at ¶ 5. There were two televisions, located in the dining room of the restaurant, in locations plainly visible to patrons; it is unclear whether both, or just one, was connected to the DirecTV service. The restaurant did not advertise that it showed DirecTV and the service was primarily for Walter and Mandy's personal use. *Id.*

On November 19, 2013, a DirecTV auditor named Kevin Karlak went to Great Wall. Mader Aff. ¶ 10. The televisions were off when Karlak entered. Mandy Yuen Aff. ¶ 7.[3] Karlak asked Mandy to turn on a television and change it to channel 212, which she did. *Id.*; Karlak Aff. at 1, ECF No. 22-6. When she changed the channel, Karlak observed a DirecTV on screen guide and channel information bar on the television screen. Karlak Aff. at 2. He took photographs of television screen with the DirecTV bar on it. *See* Mader Aff. Ex. C, ECF No. 22-8. Both Walter and Mandy state they did not know they were doing anything wrong and stopped immediately when DirecTV notified them that they were not authorized to use DirecTV in the restaurant. *Id.* at ¶ 6, Mandy Yuen Aff. ¶ 8, ECF No. 32-2. DirecTV filed this suit against the Yuens on September 1, 2015, claiming violations of 47 U.S.C. § 605, 18 U.S.C. § 2511, and common law civil conversion.

---

[3] DirecTV appears to dispute this fact, contending that the restaurant "was exhibiting DIRECTV Satellite Programming for public viewing, specifically NFL Reply [sic; should be "Replay"] on DIRECTV channel 212," Defendants' Resp. to SOF 22, ECF 32. Karlak's affidavit, however, states that he asked that the channel be changed to 212; if that was the NFL Replay channel, as DirecTV now argues, then Karlak's affidavit is inconsistent with any argument that the NFL Replay content was being shown in the restaurant when Karlak entered. Furthermore, the audit video demonstrates that both of the televisions in the restaurant were off when Karlak entered. *See* Pl.'s Ex. B. Thus, so far as the record establishes, the only time NFL Replay was divulged was at Karlak's request.

## DISCUSSION

A motion for summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). DirecTV bears the burden of proving that there is no dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

DirecTV sued the Yuens under 47 U.S.C. § 605(a). As relevant here, the statute prohibits a communications recipient (such as a satellite television subscriber) "not being authorized by the sender" from "divulg[ing]" a communication "for his own benefit or for the benefit of another not entitled thereto."[4] There is no question that the Yuens did show a DirecTV program to the auditor at his request, which at least one court has found constitutes a divulgence even if no other patrons are present. *Compare DIRECTV, LLC v. Perugini,* 28 F. Supp. 3d 351, 355 (M.D. Pa. 2014) (auditor alone sufficient) *with See DirecTV, LLC v. Spina*, No. 115CV00104JMSTAB, 2016 WL 4528458, at *19 (S.D. Ind. Aug. 30, 2016), *reconsideration denied*, No. 115CV00104JMSTAB, 2017 WL 36296 (S.D. Ind. Jan. 4, 2017) (one patron in addition to auditor during business hours sufficient). In the video of the audit, other patrons are present in the restaurant (although so far as the video shows, no one other than the auditor appears to be viewing the program once it is turned on). *See* Pl.'s Ex. B (on file with the Court).

The question of authorization, however, presents a material fact dispute. DirecTV argues that authorization is only relevant to questions of intent and willfulness, not liability, but that is wrong. If the Yuens were authorized by DirecTV to display transmissions at the restaurant, then

---

[4] The statute is more commonly used against those who pirate satellite television without any sort of account or authorization. *See* David V. Lampman II, *The Unusual Suspects: Unscrambling Satellite Piracy*, 22 CARDOZO ARTS & ENT. L. J. 553, 580-582 (2004). In this case, the parties appear to agree that the Yuens were authorized to receive the programing; the question is whether they were authorized to display it to the public in their restaurant.

they are not liable. *Cf. J&J Sports Productions v. Mandell Family Ventures, LLC*, 751 F.3d 346, 351 (5th Cir. 2014) ("The relevant portions of § 605(a) address only the *unauthorized* interception or receipt of radio communications") (emphasis added). If they were not authorized but believed in good faith that they were, then they are liable but not for enhanced damages of up to $100,000; if they were not authorized and did not have a good faith basis to believe that they were authorized, then their violation may be found to have been willful. *See* 47 U.S.C. § 605(e)(2) (allowing damages of up to $100,000 for willful violation); *J & J Sports Prods., Inc. v. Tu*, No. 08 C 4119, 2008 WL 4833116, at *2 (N.D. Ill. Oct. 29, 2008) (considering "(1) the number of violations; (2) defendant's unlawful monetary gains; (3) plaintiff's significant actual damages; (4) whether defendant advertised for the event; and (5) whether defendant collected a cover charge on the night of the event" to determine enhanced damages award).

DirecTV's evidence fails to establish as a matter of law that the Yuens were not authorized to display DirecTV transmissions at the restaurant.[5] The only evidence DirecTV has presented that the Yuens were not authorized are a few brief statements in the affidavit of Kent Mader, the Vice President of Risk Management for DirecTV. In his affidavit, Mader states that "commercial programming subscriptions are generally more expensive since the programming will be displayed for public viewing" and that "Defendants named above did not have the right to exhibit DirecTV Satellite Programming in their commercial establishment on November 19,

---

[5] The Court must to some extent construct DirecTV's argument for it, as its brief and submitted record are often conclusory and unsupported. For example, its initial discussion of authorization contains just three sentences and no citations for how this Court should determine authorization. *See* Pl.'s Mem. at 10. Similarly, DirecTV accords one sentence and no factual or legal citation for the proposition that the Yuen's use was "intentional and done for commercial gain, and required scheming and overt acts, justifying the imposition of the maximum statutory damages under the Communications Act." *Id.* at 11. Given the limited evidence presented by DirecTV, however, these aspersions are far from self-evident and a jury could reasonably, and easily, reject them.

2013."[6] Mader Aff. ¶ 6, 9. DirecTV attached a printout from its computer system showing that the Yuens had a "residential" account. Mader Aff. Ex. D, ECF No. 22-9. That document does not set forth any restrictions on the use of the DirecTV service, however, and DirecTV did not introduce any other evidence (such as a contract between the parties) suggesting what the terms and conditions of a "residential" DirecTV account are.

The Yuens have contradicted DirecTV's evidence of its general practice with their affidavits, which show they asked for permission from a DirecTV representative—indeed, the representative who sold them the DirecTV service—and were told they could use the service in their restaurant. *See* Walter Yuen Aff. ¶ 4-5. In response, DirecTV attempted to introduce a "Customer Agreement." *See* Pl.'s Reply Ex. 1, ECF No. 33-1. Both Yuens, however, testified in response that they had never received or seen such a document. *See* Supp. Walter Yuen Aff. ¶ 1-4; Supp. Mandy Yuen Aff. ¶ 1-4, ECF No. 37. The Customer Agreement is not signed and does not bear the Yuens' account number or any other information that would link it to the Yuens. It is not even clear that the agreement, dated April 24, 2009 and valid "until replaced" would govern the 2013 interaction at the Yuens' restaurant. At summary judgment, the Court may only (with a few exceptions not relevant here) consider evidence that "would be admissible or usable at trial, including properly authenticated and admissible documents or evidence." *Smith v. City of Chicago*, 242 F.3d 737, 741 (7th Cir. 2001); *see also Giant Screen Sports v. Canadian Imperial Bank of Commerce*, 553 F.3d 527, 537 (7th Cir. 2009) (dispute about authenticity of signature is a dispute of material fact). And even if genuine, DirecTV's evidence still falls short because it

---

[6] The Court notes Mader's statement about whether the defendants had the right to exhibit the programming is a conclusion of law not appropriate in an affidavit. *See Miller v. Am. Nat. Bank & Trust Co. of Chicago*, No. 88 C 10909, 1992 WL 168813, at *4 (N.D. Ill. July 10, 1992), *aff'd*, 4 F.3d 518 (7th Cir. 1993).

has failed to show as a matter of law that the Customer Agreement was provided to the Yuens or otherwise bound them.

DirecTV argues that the Yuens do not "claim they had an account with DIRECTV to display or divulge DIRECTV Satellite Programming, or that the Customer Service agent told them they could do same." Pl.'s Reply at 6. This contention is simply wrong. The Yuens assert that a DirecTV agent told them that they could watch DirecTV at their commercial establishment and thus their conduct was authorized. To the extent that DirecTV means to argue that its representative's statement that the Yuens could watch at their restaurant did not extend to doing so when other customers were around, the Court finds it is a reasonable inference from Walter's testimony that his representations that he wanted to bring the receiver to the restaurant and watch there might include doing so when patrons are present.[7]

For these reasons, the Court cannot conclude that DirecTV has met its burden on summary judgment. A reasonable factfinder, presented with the admissible evidence, might credit the Yuens' testimony and believe that they did in fact have an oral modification to the typical terms of DirecTV service which allowed the Yuens to use DirecTV's services in their restaurant. The Court cannot make such credibility determinations at summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). As such, the motion for summary judgment is denied.

\*       \*       \*

---

[7] This is not the only inference that could be made from Walter's testimony. The Yuens, however, are entitled to have all reasonable inferences drawn in their favor at this stage of the litigation. *See Ripberger v. Corizon, Inc.*, 773 F.3d 871, 876 (7th Cir. 2014).

Dated: June 29, 2017

John J. Tharp, Jr.
United States District Judge